IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IMMANUEL KYLE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 17 C 03649 |
| | ) | |
| MEGAN BRENNAN, Postmaster | ) | Judge John J. Tharp, Jr. |
| General, United States Postal Service, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Immanuel Kyle, a former mail handler for the Postal Service's Chicago Network Distribution Center, alleges that the Postal Service[1] discriminated against him on the basis of his mental disability and retaliated against him for corroborating a colleague's discrimination claim. Mr. Kyle alleges 16 incidents of alleged discrimination or retaliation. The defendant filed a partial motion to dismiss, arguing that Mr. Kyle failed to exhaust administrative remedies for several of these incidents, that his FMLA claim is barred by the statute of limitations, and that he fails to state a claim for hostile work environment or disability discrimination. Mr. Kyle's retaliation claim regarding incidents that were administratively exhausted, however, the defendant acknowledges, survives the motion to dismiss. The partial motion to dismiss is granted in part and denied in part. Mr. Kyle's retaliation, discrimination, FMLA, and hostile work environment claims regarding

---

[1] Although the complaint does not say so expressly, the named defendant, Postmaster General Megan J. Brennan, is being sued in her official capacity only, as Title VII and FMLA claims may only be asserted against employers, *see Perez v. Cook Cty. Sheriff's Office*, No. 19-CV-1788, 2020 WL 777288, at *3 (N.D. Ill. Feb. 18, 2020) (citing *Williams v. Banning*, 72 F.3d 552, 555 (7th Cir. 1995)), and there are no allegations concerning General Brennan (who took office in February 2015, after most of the conduct at issue in this case occurred).

incidents 1-5 and 12-14 may go forward. His claims regarding incidents 6-11 and 15-16 are dismissed without prejudice.

**BACKGROUND**

Mr. Kyle worked as a mail handler at the Chicago Network Distribution Center (CNDC) in Forest Park, Illinois. Mr. Kyle alleges that he began suffering from a disability at an unspecified time during the relevant time periods of his complaint that caused him to miss work, and that he has been diagnosed with acute stress disorder, major depression, anxiety disorder, and PTSD. Second Amended Complaint ("SAC") ¶¶ 8-10. As a result of these conditions, he alleges, "he would sometimes miss days, weeks, and months of work." *Id.* ¶ 11. At an unidentified point in time, Mr. Kyle says, he acted as a representative and a witness for a colleague who had filed an EEOC complaint of gender discrimination by management staff at the CNDC. Once the managers became aware of Mr. Kyle's involvement in the discrimination complaint, Mr. Kyle avers, "the managers collectively began a campaign of retaliation, intimidation, bullying, and psychological torment against the Plaintiff." *Id.* ¶ 24. Specifically, as best the Court can identify them, the retribution comprises some 16 incidents that Mr. Kyle refers to in his complaint:

1. In March 2014, Mr. Kyle received his forklift operators' license. Two of the managers implicated in Mr. Kyle's colleague's EEO complaint, Joseph Burkes and Hirsch Carr, were the forklift unit supervisors. Mr. Kyle alleges that he requested to be promoted to a forklift position, which were generally subject to promotion by seniority, and that the supervisors regularly denied his requests, often promoted employees with less seniority, and would yell or curse at him when he requested assignment to a forklift position. *Id.* ¶¶ 27-30, 49.

2. Supervisor Attendance Control Mercy Antony refused to allow Mr. Kyle to return to work from medical leave on June 10-11, 2014, without providing medical documentation disclosing his diagnosis. Mr. Kyle asserts that he had never had to disclose his medical diagnosis or conditions previously. Ms. Antony initially said that his medical paperwork was sufficient but then delayed Mr. Kyle's return to work by escalating the return request to the Plant Manager, insisting that Mr. Kyle tell her his diagnosis, and erroneously stating that she could not refer him to the USPS's regular doctor for a fitness-for-duty examination because his condition was psychological in nature. *Id.* ¶ 39.

3. Mr. Kyle met with Plant Manager Donald Williams and Ms. Antony on June 17, 2014 to discuss his delay in returning to work on June 10-11. Mr. Kyle stated that in the meeting "he was unlawfully manipulated into disclosing his private and [personal] medical information under duress." *Id.* ¶ 44. The parties agreed to meet the next day with a union steward present, but Mr. Kyle was subsequently instructed to return to the office later that day without a union steward. Mr. Williams informed Mr. Kyle that he needed to provide additional medical documentation with his diagnosis. Mr. Kyle responded that his documentation had never been deemed inadequate before, and that Ms. Antony had initially said on June 10 that his existing medical forms were sufficient. Mr. Kyle stated "his belief that SAC Antony and PM Williams was now retaliating against him as an immediate response to his earlier complaints." Mr. Kyle was sent home from work that day. *Id.*

4. The next day, Mr. Kyle reported to the meeting that had been scheduled for June 18, 2014, but Mr. Williams was not present, and Ms. Antony allegedly told Mr. Kyle that there wasn't going to be a meeting and slammed the door in his face. *Id.* ¶ 46. Mr. Kyle met with Ms. Antony and acting Manager Distribution Operations Victor Echeverri later that day. He requested that a union steward or witness be present, which Ms. Antony and Mr. Echeverri refused. Ms. Antony continued to ask Mr. Kyle for additional medical documentation, and during the meeting he experienced a panic attack. He asked for a leave slip to use his existing FMLA case number to take leave, and Ms. Antony said that she would charge him as AWOL if he left that day, rather than permitting him to use FMLA leave. Mr. Echeverri was allegedly with Mr. Kyle while he had a panic attack on the workroom floor, "yet did not remove the Plaintiff from the workroom floor or allow him to leave." Mr. Kyle stayed for the rest of the workday. *Id.*

5. Mr. Kyle sought an emergency transfer to another position through an accommodation request on June 20, 2014. On June 26, he was informed that his transfer would be denied because Mr. Williams would not authorize the request. *Id.* ¶¶ 47-48.

6. Beginning in June 2014, Ms. Antony allegedly refused to pay Mr. Kyle for time when he was on leave "without just cause." *Id.* ¶ 50.

7. Manager Distribution Operations Carla Lewis allegedly "began actively and indirectly retaliating against the Plaintiff by way of negative personal interactions, denial of pay for hours worked by the Plaintiff, and giving instructions to her subordinates to watch, discipline, stalk, and harass the Plaintiff without just cause." *Id.* ¶ 51.

8. Mr. Kyle alleges that Mr. Echeverri removed him from his unit and replaced him with employees from a different unit in mid-2014. *Id.* ¶ 52.

9. Mr. Williams allegedly "witnessed and affirmed" Mr. Kyle's removal from the unit. *Id.* ¶ 53.

10. "After the close of the pay period the Plaintiff was not paid by MDO Carla Lewis for time worked on Saturday October 11, 2014." *Id.* ¶ 54.

11. Ms. Lewis allegedly yelled at Mr. Kyle to "Stop asking me about your time!" when he asked her to correct his missing time on November 19, 2014. *Id.* ¶ 55.

12. Ms. Antony and Supervisor Distribution Operations Wallace Anderson marked Mr. Kyle AWOL on December 2, 2014, while he was out on bereavement. *Id.* ¶ 56.

13. On December 18, 2014, Ms. Antony and Mr. Anderson did not pay Mr. Kyle for the time in which he was out on a preapproved absence for bereavement. *Id.* ¶ 57.

14. On December 27, 2014, Ms. Antony and Mr. Anderson still did not pay Mr. Kyle for the time in which he was out on a preapproved absence for bereavement, even after receiving requested proof of bereavement. *Id.* ¶ 58.

15. Mr. Anderson told Mr. Kyle on February 19, 2015, at Ms. Lewis's direction, that he would not be paid for the previous day's overtime work. *Id.* ¶ 60.

16. The Postal Service disclosed Mr. Kyle's private medical information to CNDC management by e-mail. *Id.* ¶ 67.

Mr. Kyle filed an EEO complaint with the Postal Service on July 15, 2014 alleging retaliation with respect to incident 1; he added incidents 2, 3, 4, and an allegation that he was marked AWOL when he arrived late to work on June 26, 2014 to his initial EEO complaint, alleging both disability discrimination and retaliation. The administrative judge found that Mr. Kyle failed to prove discrimination or retaliation, and the EEOC affirmed the dismissal of his administrative claim. Mr. Kyle received a Final Agency Decision on February 9, 2017. While that process was moving forward, Mr. Kyle filed a second EEO complaint on March 12, 2015 with respect to being marked AWOL and not being paid during his bereavement leave in December 2014 (incidents 12-14). He received a Final Agency Decision as to that EEO complaint on July 31, 2015 finding no discrimination or retaliation.[2]

---

[2] "The Postal Service, like every other federal agency, is charged with the initial disposition of discrimination complaints lodged against the agency by its employees. *See* 39 C.F.R. § 255.6; 29 C.F.R. §§ 1614.101 *et seq.* . . . Once an agency has dismissed or otherwise disposed of a complaint, federal employees have the right to appeal that decision to the EEOC, *see* 29 C.F.R. §§

4

Mr. Kyle filed this case in May 2017, after his 2015 EEO complaint had concluded, and later amended his complaint to include the claims exhausted in his 2014 EEO complaint. He filed a second amended complaint on April 19, 2019. The defendant has filed a motion to dismiss, arguing that Mr. Kyle's FMLA claim is time-barred, that he failed to exhaust administrative remedies for some of his claims, and that he fails to state a hostile work environment claim or to plausibly allege that he was a qualified individual with a disability for purposes of the Rehabilitation Act.

## DISCUSSION

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint. *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). To survive such a motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In ruling on a motion to dismiss under Rule 12(b)(6), a court must construe all factual allegations as true and draw all reasonable inferences in the plaintiff's favor, but the court need not accept legal conclusions or conclusory allegations. *Id.* at 680-82.

A plaintiff bringing claims of disability discrimination under the Rehabilitation Act or retaliation under Title VII must exhaust administrative remedies before bringing suit. 29 U.S.C. § 794a. "Exhaustion is not a jurisdictional issue, but a condition precedent to bringing a claim

---

1614.403 *et seq.,* or file a complaint in federal court, *see* 29 C.F.R. § 1614.407." *Smith v. Potter*, 445 F.3d 1000, 1002 n.1 (7th Cir. 2006).

under the Act . . . and plaintiffs who have not exhausted their administrative remedies have prematurely brought their claims into the courts." *Teal v. Potter*, 559 F.3d 687, 691 (7th Cir. 2009). The "scope of the subsequent judicial proceedings is limited by the nature of the charges filed with the EEOC. An aggrieved employee may not complain to the EEOC of only certain instances of discrimination, and then seek judicial relief for different instances of discrimination." *Rush v. McDonald's Corp.*, 966 F.2d 1104, 1110 (7th Cir. 1992). The Postal Service asserts that incidents 6-11[3] and 15-16 were not exhausted or, in the alternative, are not timely. *See* 29 C.F.R. § 1614.105 (for a complaint to be timely, a postal employee must consult an EEO counselor within 45 days of an alleged instance of discrimination).

In his 2015 EEO complaint, Mr. Kyle alleged that he was discriminated against on December 2 and December 30, 2014 when he was marked AWOL and was not compensated for preapproved bereavement leave, incidents 12-14. In his 2014 EEO complaint, Mr. Kyle alleged the facts comprising incidents 1-4. He admits that he did not exhaust administrative remedies for incident 16, Pl.'s Resp. MTD at 18, ECF No. 113, and the Postal Service does not contest that he exhausted incident 5 for purposes of this motion, Def.'s Reply MTD at 2 n.1, ECF No. 114.

The defendant argues that incidents 6 and 7 were not mentioned in Mr. Kyle's 2014 EEO complaint and that these incidents, which occurred in June 2014, had occurred too long ago to include in his 2015 EEO complaint. Incidents 8 and 9 were not mentioned in either complaint and, because Mr. Kyle does not provide a date for either incident, it is unclear whether they would have been timely even if they had been included. Incidents 10 and 11 occurred after Mr. Kyle's 2014

---

[3] The defendant initially argued that Mr. Kyle had not exhausted administrative remedies for incident 5, as he included those facts only in his pre-complaint counseling rather than in his EEO complaints, but withdraws that argument for purposes of this motion. Def.'s Reply MTD at 2 n.1, ECF No. 114.

complaint but were not included in the 2015 complaint, nor would they have been timely if they had been included. Finally, incident 15, which occurred after he filed his 2014 complaint, was never mentioned in Mr. Kyle's 2015 complaint. Because a plaintiff "cannot bring claims in a lawsuit that were not included in [his] EEOC charge," these claims that were not exhausted must be dismissed without prejudice. *Teal*, 559 F.3d at 691, 693; *see also Greene v. Meese*, 875 F.2d 639, 643 (7th Cir. 1989) (dismissal without prejudice is the proper resolution for failure to exhaust administrative remedies).

As to the remaining incidents, the Postal Service agrees that Mr. Kyle's retaliation claim may proceed, but argues that his disability discrimination claim is fatally flawed because he asserts only that his disability limits his ability to work, rather than any other major life activity, and Mr. Kyle cannot be simultaneously able to perform all of the essential functions of his job and too disabled to work.[4] To the extent that this argument complains that Mr. Kyle has not expressly stated each of the elements of a disability discrimination claim in his complaint, it is not well-founded, as it is "manifestly inappropriate for a district court to demand that complaints contain all legal elements (or factors) plus facts corresponding to each." *Rowlands v. United Parcel Serv. – Fort Wayne*, 901 F.3d 792, 800 (7th Cir. 2018). Mr. Kyle has certainly not pleaded himself out of court on this theory; he has not asserted that he was ***not*** impaired in any other major life activity in a way that would undermine his claim. More broadly, it is axiomatic that a plaintiff is not required to plead legal theories. *See Jajeh v. County of Cook,* 678 F.3d 560, 567 (7th Cir. 2012)

---

[4] Under the ADA and Rehabilitation Act, "statutory protections against discrimination are protections of '[otherwise] qualified individual[s] with a disability,' 42 U.S.C. § 12112(a), but the retaliation provision protects individuals, period." *Morgan v. Joint Admin. Bd.*, 268 F.3d 456, 458 (7th Cir. 2001) (alterations in original); *see also Anderson v. Donahoe*, 699 F.3d 989, 994-95 (7th Cir. 2012).

(hostile work environment claim pleaded where complaint never used that term). A motion to dismiss should be granted when the facts in the plaintiff's complaint, taken as true, do not state a plausible claim under any "recognized legal theory." *See Richards v. Mitcheff,* 696 F.3d 635, 638 (7th Cir. 2012).

While the incidents that Mr. Kyle did not administratively exhaust are properly dismissed without prejudice, the incidents that remain could support a claim based on retaliation, disability discrimination, FMLA, or a hostile work environment. Mr. Kyle easily states facts that plausibly support a retaliation claim: for example, after learning that Mr. Kyle had been involved in his colleague's discrimination complaint that implicated them, Mr. Burkes and Mr. Carr allegedly refused to promote him to a seniority-based forklift position, SAC ¶¶ 27-30; Ms. Antony and Mr. Williams required that Mr. Kyle disclose his medical diagnosis to return to work, allegedly "retaliating against him as an immediate response to his earlier complaints," *id.* ¶ 44; after a contentious meeting with Mr. Williams and Ms. Antony, Mr. Kyle was denied an emergency transfer to another position because Mr. Williams would not authorize it, *id.* ¶¶ 47-48; and in December 2014, Ms. Antony and Mr. Anderson marked Mr. Kyle AWOL and refused to pay him for time he was absent on preapproved bereavement leave, *id.* ¶¶ 56-59. These facts plausibly state a claim for retaliation.

To the extent that Mr. Kyle's other claims are based on the same administratively exhausted incidents 1-5 and 12-14, disability discrimination, FMLA violations, or a hostile work environment are simply alternative legal theories that undergird the same set of facts. It is not the Court's place to dismiss any one of these legal theories pursuant to Rule 12(b)(6), as "[o]ne set of facts producing one injury creates one claim for relief, no matter how many laws the deeds violate." *NAACP v. Am. Family Mut. Ins. Co.*, 978 F.2d 287, 292 (7th Cir. 1992). Accordingly, the Court need not

assess the plausibility of Mr. Kyle's disability discrimination allegations; his claim related to these administratively exhausted incidents may proceed, irrespective of the legal theory he chooses to pursue. The time to challenge the viability of additional, or alternative, legal theories is at summary judgment pursuant to Rule 56 (permitting motions as to claims or parts of claims) rather than Rule 12(b)(6) (permitting only the dismissal of claims). *See BBL, Inc. v. City of Angola*, 809 F.3d 317, 325 (7th Cir. 2015).

In the SAC, Mr. Kyle alleges for the first time an FMLA claim related to Ms. Antony applying his FMLA leave to the two days in June 2014 in which he was absent while seeking additional medical documentation before he could return to work. SAC ¶¶ 39, 42. Mr. Kyle alleges that this claim is not untimely because the FMLA complaint "has always been embedded within his administrative level allegations." Pl.'s Resp. MTD at 18, ECF No. 113. The Postal Service states that the issue is not exhaustion but the statute of limitations under the FMLA: FMLA claims need not be exhausted administratively, but they must be brought within a two- to three-year timeframe. 29 U.S.C. § 2617(c); *Sampra v. United States Dep't of Transp.*, 888 F.3d 330, 332 (7th Cir. 2018) (statute of limitations under the FMLA is two years, or three years if the employer acted "willfully"). Here, however, Mr. Kyle's FMLA claim is premised on the same set of facts as his retaliation and discrimination claims regarding alleged conduct in June 2014. To the extent that the Postal Service asserts that his FMLA claim is time-barred, it asserts an affirmative defense that Mr. Kyle is not obligated to plead around. At this stage, because the FMLA claim is simply another legal theory premised on the same set of facts, it may proceed.

Similarly, the defendant alleges, and Mr. Kyle disputes, that he has not adequately stated a hostile work environment claim with respect to the administratively exhausted incidents. As noted, Mr. Kyle's claim "survives if it is supported by any single recognized legal theory." *Zurbriggen v.*

9

*Twin Hill Acquisition Co., Inc.*, 338 F. Supp. 3d 875, 882 (N.D. Ill. 2018). Here, however, the defendant argues that even if Mr. Kyle's allegations are true, his work environment was not objectively offensive or abusive and the alleged conduct was not severe or pervasive. Mem. Supp. MTD at 12, ECF No. 110. Specifically, the defendant argues that being required to submit medical documentation does not rise to the level of a hostile work environment, even if the plaintiff believes that the requirement is "overwhelmingly excessive and unnecessary" and that Mr. Kyle's other allegations, such as being passed over for a forklift position and being denied FMLA leave while he was having a panic attack at work, were "likewise innocuous" and therefore his hostile work environment claim should be dismissed. *Id.* at 13. The Court disagrees.

While the Seventh Circuit has not expressly decided whether a hostile work environment claim exists under the Rehabilitation Act, *see Mannie v. Potter*, 394 F.3d 977, 982 (7th Cir. 2005), "the Postal Service assumes for the sake of this motion that the standards for proving a hostile work environment claim under the Rehabilitation Act would mirror those under Title VII." Mem. Supp. MTD at 12, ECF No. 110. "To state a Title VII hostile work environment claim, a plaintiff must allege (1) she was subject to unwelcome harassment; (2) the harassment was based on . . . [a] reason forbidden by Title VII; (3) the harassment was severe or pervasive so as to alter the conditions of employment and create a hostile or abusive working environment; and (4) there is basis for employer liability." *Huri v. Office of the Chief Judge of the Circuit Court of Cook Cty.*, 804 F.3d 826, 833–34 (7th Cir. 2015). Mr. Kyle alleges in the SAC that he was harassed in retaliation for his participation in his colleague's discrimination complaint and because of his disability. Insofar as he alleges harassment by his supervisors, there is a basis for employer liability. *See Vance v. Ball State Univ.*, 570 U.S. 421, 424 (2013). Finally, his allegations are sufficient at this stage to plausibly plead severe or pervasive harassment that alters the conditions

of employment and creates a hostile or abusive working environment.

The defendant argues that Mr. Kyle's allegations are insufficient, in part because requiring employees to provide medical documentation to return to work from leave does not rise to the level of a hostile work environment. Mem. Supp. MTD at 13, ECF No. 110. Unlike the plaintiff in *Thomas-Bagrowski v. Mineta*, No. 04-CV-3544, 2008 WL 4371295, at *5 (N.D. Ill. Sept. 19, 2008), *aff'd sub nom. Thomas-Bagrowski v. LaHood*, 361 F. App'x 694 (7th Cir. 2010), however, Mr. Kyle complains not about documentation that every employee was required to provide to return to work, but about being singled out and forced to disclose his private medical diagnosis when others were not required to do so. He alleges that he had never previously been required to provide his medical diagnosis as part of his leave paperwork and that he was not aware of any other employees being required to provide their diagnoses. Further, what the defendant terms certain supervisors' "refus[al] to allow him to drive a forklift," Mem. Supp. MTD at 4, ECF No. 110, elides that Mr. Kyle was repeatedly passed over for a seniority-based promotion, allegedly coupled with verbal abuse or threats from Mr. Kyle's "one-time friend" who was implicated in Mr. Kyle's colleague's discrimination complaint. SAC ¶¶ 30, 32. Mr. Kyle was repeatedly not paid for time worked or on approved leave, prevented from having union representation present at meetings with his supervisors, threatened with being marked AWOL, and was denied an accommodation request for an emergency transfer by one of the supervisors about whom he complained. While ultimately Mr. Kyle must show conduct that was "sufficiently severe or pervasive to alter the conditions of employment such that it creates an *abusive* working environment," *Alexander v. Casino Queen, Inc.*, 739 F.3d 972, 982 (7th Cir. 2014), "it is premature at the pleadings stage to conclude just how abusive [the plaintiff's] work environment was." *Huri*,

804 F.3d at 834.⁵ While the defendant characterizes "these allegations as the sort of 'trivial' incidents not covered by Title VII . . . that misunderstands the Supreme Court's standard, which requires that we consider the *totality* of [the plaintiff's] factual allegations." *Alamo v. Bliss*, 864 F.3d 541, 550-51 (7th Cir. 2017). Considering the totality of his claims, Mr. Kyle has plausibly alleged a "multifaceted effort to harass [him]." *Id.* at 551. Accordingly, his hostile work environment claim related to the administratively exhausted incidents may also proceed.

For the foregoing reasons, the defendant's motion to dismiss is granted in part and denied in part. Mr. Kyle's discrimination and retaliation claims with respect to incidents 6-11 and 15-16 are dismissed without prejudice.⁶ His discrimination, retaliation, FMLA, and hostile work environment claims with respect to incidents 1-5 and 12-14 may proceed.

Date: March 20, 2020

John J. Tharp, Jr.
United States District Judge

---

⁵ "The pleading standards in Title VII cases are, of course, different from the evidentiary burden a plaintiff must subsequently meet. It may be that Huri, once discovery has run its course, cannot produce evidence to survive summary judgment. But that question can safely be postponed to another day." *Huri*, 804 F.3d at 834 (internal citation omitted).

⁶ This is not to say that these claims can be reasserted in this case, only that they are not being dismissed on the merits because they were not administratively exhausted.